IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE, et al.,** | : | Civil No. 3:21-CV-477 |
| **Plaintiffs,** | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SCHUYLKILL COUNTY COURTHOUSE, et al.,** | : | |
| **Defendants** | : | |

# MEMORANDUM AND ORDER

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

This case—which involves allegations of workplace misconduct at the Schuylkill County Courthouse involving alleged sexual harassment, assault and predation coupled with assertions of official indifference to the plight of the alleged victims of this workplace violence—comes before us for consideration of discovery issues raised by Maria Casey, the Schuylkill County Clerk of Courts. Ms. Casey, who alleges that she has been an outspoken critic of the defendants in this lawsuit, was granted leave to intervene in this case to protect what she contends are privacy, confidentiality, relevance and privilege concerns that arise from a discovery demand which defendant George Halcovage has propounded on Schuylkill County, another defendant in this lawsuit. (Doc. 103). This discovery demand calls upon the county

1

to produce the complete computer hard drive and storage media for Ms. Casey's work computer as well as all text messages on the county-owned cellphone assigned to Ms. Casey.

On April 18, 2022, we granted Ms. Casey leave to intervene and ordered Intervenor Casey, and the parties, to consult and confer regarding the establishment of a protocol which will allow Casey to raise and resolve any privacy, confidentiality, relevance and privilege concerns that arise from the discovery demand defendant George Halcovage has propounded on Schuylkill County which calls for the county to produce the complete computer hard drive and storage media for Ms. Casey's work computer as well as all text messages on the county-owned cellphone assigned to Ms. Casey. We also advised the parties that if they could not agree upon discovery protocols, they were to submit their competing discovery proposals to the court, along with accompanying memoranda of law regarding their respective positions in this discovery matter, on or before May 10, 2022.

The parties have not reached agreement on search protocols. They have, therefore, submitted competing proposals to the court for our consideration. (Docs. 128-30.) In considering these competing proposals, we are guided by several fundamental tenets. First, in framing a discovery protocol in this area:

> [W]e must be mindful of the fact that social media is at once both ubiquitous and often intensely personal, with persons sharing through social media, and storing on electronic media, the most intimate of

personal details on a host of matters, many of which may be entirely unrelated to issues in specific litigation. As the Supreme Court has observed in a criminal context:

> [T]here is an element of pervasiveness that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception.

Riley v. California, 573 U.S. 373, 395, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014). Thus, "[t]oday ... it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate." Id.

Acknowledging this fact of our modern society:

> Numerous courts have also recognized this need to "guard against undue intrusiveness" and to be "cautious in requiring" the forensic inspection of electronic devices, in order to protect privacy interests. See John B. v. Goetz, 531 F.3d 448, 459-60 (6th Cir. 2008) (citing cases and concluding that the "compelled forensic imaging orders here fail[ed] to account properly for ... significant privacy and confidentiality concerns"). "Mere suspicion" or speculation that an opposing party may be withholding discoverable information is insufficient to support an "intrusive examination" of the opposing party's electronic devices or information systems. Scotts Co. LLC v. Liberty Mut. Ins. Co., No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007).

Hespe v. City of Chicago, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016).

3

Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *4 (M.D. Pa. Jan. 9, 2020).

Yet, we also recognize that these expectations of privacy are tempered by other legal principles, and parties may waive their expectations of privacy in an employment setting particularly with respect to an employer's computer and cellphones. See Walker v. Coffey, 905 F.3d 138, 149 (3d Cir. 2018). Here, the county has such a computer privacy waiver policy, which provided in relevant part as follows:

> No Expectation of Privacy
>
> Employees are given computers and Internet access to assist them in the performance of their jobs. Employees should have no expectation of privacy in anything they create, store, send or receive using the County's computer equipment. The computer network is the property of the County and may be used only for County purposes.
>
> Waiver of privacy rights.
>
> User expressly waives any right of privacy in anything they create, store, send or receive using the County's computer equipment or Internet access. User consents to allow County personnel access to and review of all materials created, stored, sent or received by User through any County network or Internet connection.

(Doc. 128, at 9.)

Further, any search protocol we fashion must take into account the parties' need for relevant information as well as Rule 26(b) of the Federal Rules of Civil Procedure, which recognizes valid claims of privilege, generally defines the scope

4

of discovery permitted in a civil action, sets certain limits on discovery, and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General.*
>
> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b). Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *3 (M.D. Pa. Jan. 9, 2020).

Balancing all of these competing interests and concerns, in the exercise of our broad discretion in this field, we will prescribe the following search protocol for these electronic devices:

First, in order to set temporal limits on the scope of any search, and acknowledging that these devices were possessed by Casey prior to assuming her current duties, the digital information to be searched will include only the information stored on the Clerk of Courts' County-owned hard drive and County-owned cellphone, after the date Casey became Clerk of Courts.

Second, we will set the following topical limitations on the search of this stored electronic information: Only digital information, together with metadata, referencing any of the four plaintiffs or George Halcovage shall be produced.

Third, in order to ensure that the search is conducted in a neutral and detached manner, the parties may choose to have the search conducted by either: (1) the County's IT Department; or (2) an IT consultant agreed upon by the parties and Intervenor.

Fourth, in order to protect and preserve any claims of privilege that may exist, once potentially relevant records are identified through this search Casey and her counsel may review the potentially responsive and relevant information before production and, to the extent she concludes the relevant information contains privileged information, Casey may redact it and provide all parties with a privilege log.

Finally, in order to allow for a dispassionate assessment of any privilege claims if upon review of the privilege log there is any dispute relating to redacted information, the parties may submit the redacted information to the court for *in camera* review.

So ordered this 12th day of May 2022.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge