IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE, et al.,** | : | Civil No. 3:21-CV-477 |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SCHUYLKILL COUNTY** | : | |
| **COURTHOUSE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## **MEMORANDUM AND ORDER**

### I.   Factual and Procedural Background

This case involves allegations of workplace misconduct at the Schuylkill County Courthouse involving alleged sexual harassment, assault, and predation coupled with assertions of official indifference to the plight of the alleged victims of this workplace violence and retaliation against those who raised workplace sexual harassment concerns. The parties are now engaged in a course of discovery aimed at evaluating the evidence relating to these allegations.

In the course of this ongoing discovery, issues have now arisen relating to claims of attorney-client privilege. These issues initially came to our attention in a somewhat oblique fashion in the course of a deposition when plaintiffs' counsel was asking a defendant to disclose what documents were provided to outside counsel

1

relating to a specific employment issue. Presented with this narrow issue in an ad hoc fashion during the course of a deposition, we concluded that the specific question sought privileged information relying upon the familiar legal proposition that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390, 101 S. Ct. 677, 683, 66 L. Ed. 2d 584 (1981). However, in so ruling we gave the parties the opportunity to further brief this issue. (Docs. 170, 171).

The parties have availed themselves of this opportunity. (Docs. 176, 177, 195). However, in doing so they present us with significantly different and broader concerns regarding the application of the attorney-client privilege in this litigation. The nature of the current dispute can be simply stated: In their complaint, the plaintiffs allege that the defendants retaliated against them after they complained about alleged workplace sexual predation by Mr. Halcovage. In particular, discovery thus far has indicated that two of the plaintiffs, Jane Does 3 and 4, were placed on unpaid indefinite suspensions following an outside law firm investigation into their alleged improper use of Lexis-Nexis services. The plaintiffs have taken the position that these suspensions, and other adverse workplace actions, were retaliatory. In contrast, the defendants insist that they had an independent, good faith and non-retaliatory justification for their disciplinary decisions, and in connection with these

2

claims have alluded to the investigations and advice they received from outside counsel.

Thus, the communications between defendants and these attorneys may rest at the heart of these retaliation claims and could form the basis of any good faith business justification defense to these claims. Recognizing this fact, the plaintiffs now seek leave of court to inquire into these communications which may form the basis of a proposed defense in this case. The defendants, in turn, assert that this type of discovery into potentially privileged matters is premature since they have not yet directly asserted any defenses based upon the advice of counsel. (Doc. 195). The defense takes the position that these disclosures would be premature because they have not yet made a determination regarding whether to overtly rely upon an advice of counsel defense, even though the lawsuit has now been pending for nearly two years and it appears that any defense claims of good faith are premised at least in part upon communications with counsel.

Upon consideration, for the reasons set forth below, we conclude that it is time for the defense to make this determination since this determination in large measure controls the appropriate scope of inquiry into these communications. Thus, if the defendants intend to rely upon the advice of counsel, directly or implicitly, to justify their good faith belief that the disciplinary actions the plaintiffs claim were retaliatory were warranted, then some limited focused discovery into the information shared

with counsel and advice given by counsel would be appropriate. Additionally, if the defendants are unsure whether they would assert this defense but potentially reserve the right to do so while citing to communications with counsel as grounds for their assertions of good faith, then all parties should have the opportunity to explore the viability of this defense through focused discovery. Only if the defendants completely abjure any reliance upon the advice of counsel to justify their disciplinary actions would these legal communications remain appropriately cloaked in privilege.

## II. Discussion

Rulings regarding discovery matters are consigned to the court's discretion and judgment. Accordingly, the court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999)

>   (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

>   (b) Discovery Scope and Limits.
>
>   (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Accordingly, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and

privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("Although the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits. . . . Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Therefore, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus, we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

One of the central issues in this litigation is the question of whether the plaintiffs were subjected to acts of retaliation by the defendants after they reported workplace sexual misconduct. At this juncture, while the defendants acknowledge that some plaintiffs were disciplined or sanctioned, they insist that there was an independent, good faith, non-retaliatory reason for this action. In taking this position, various defendants have in the course of discovery referenced or alluded to investigations and advice they have received from outside counsel. If this legal advice forms the basis, in whole or in part, for any good faith defense to these workplace retaliation claims, then it seems that Rule 26's threshold relevance requirement is met. The question then becomes whether this information remains cloaked in privilege.

If the defense intends to rely upon counsel's advice in any way to bolster their good faith defense to these retaliation claims, we conclude that the privilege does not apply. The attorney-client privilege is meant to facilitate "full and frank

communication between attorneys and their clients." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007). The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn, 449 U.S. at 389. The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purposes of obtaining or providing legal assistance for the client.' " In re Teleglobe Communications Corp., 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)). Thus, the privilege reaches "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403 (1976); see also In re Ford Motor Co., 110 F.3d 954, 965 n.9 (3d Cir. 1997) (communication made by client and an attorney are privileged if made "for the purpose of securing legal advice."); United States v. Amerada Hess Corp., 619 F.2d 980, 986 (3d Cir. 1980). The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client. To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn, 449 U.S. at 390. However, when

examining privilege claims we must be mindful of two other legal tenets. First, while recognizing the value served by the privilege, courts must be mindful that the privilege obstructs the truth-finding process and should, therefore, be "applied only where necessary to achieve its purpose." Wachtel, 482 F.3d at 231; see also Westinghouse Elec. Corp., 951 F.2d at 1423. Finally, when addressing legal questions regarding whether the attorney client privilege applies to particular documents, we are cautioned to eschew any categorical approach which cloaks or rejects the privilege in a wholesale fashion without regard to the specific content of particular documents. Instead, "claims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion." United States v. Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir. 1990).

There is a corollary to these principles that applies in a case such as this where a defendant may be relying upon the advice of counsel to justify employment actions in the face of a discrimination or retaliation claim but attempts to cloak the exchanges with counsel in claims of privilege. In this setting:

> The attorney-client privilege may be waived by a client who asserts reliance on the advice of counsel as an affirmative defense. See Rhone–Poulenc Rorer v. Home Indem. Co., 32 F.3d 851, 863 (3rd Cir.1994). Under such circumstances, the client has made a conscious decision to inject the advice of counsel as an issue in the litigation. Id.

Glenmede Tr. Co. v. Thompson, 56 F.3d 476, 486 (3d Cir. 1995) (footnote omitted).

9

In the instant case, as we understand it, while the defense has not yet expressly asserted a defense of reliance upon counsel, the defendants are clearly alleging that they acted in good faith, and with a non-retaliatory purpose, when they took various adverse actions against the plaintiffs. Implicit in this assertion of good faith is the suggestion that the defendants were guided by counsel throughout these actions, who would have cautioned them away from any legally problematic conduct. At the discovery stage of this litigation, we believe that to the extent that these good faith claims are premised expressly or implicitly upon the advice of counsel, the nature and content of those communications becomes discoverable. As our colleague Judge Mehalchick has observed:

> Attorney-client communications are not automatically put at issue when the client's state of mind is in question. Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994). However, asserting a "good-faith belief" defense puts at issue the communications leading to good-faith belief, waiving privilege around those communications. United States v. Medicor Associates, Inc., 2014 WL 12588331, at *6 (W.D. Pa. 2014) (citing Cox v. Adm'r, 17 F.3d 1386, 1419 (11th Cir. 1994) (noting that affirmatively asserting good faith, rather than mere denial of criminal intent, injects the issue of the client's knowledge of the law into the case)). The consequences of a client's statement as to belief are summarized well by the court in In re Broadcom Corp. Securities Litigation:
>
>> Rather than simply deny scienter, defendants assert good faith based on an expectation the lawyers would tell them if anything illegal was happening. Defendants have injected an issue that requires examination of the attorneys' communications with defendants to see if defendants are corroborated ... Plaintiffs are now entitled to review the

> attorneys' communications on the subject topics to see if defendants are telling the truth.

In re Broadcom Corp. Securities Litigation, 2005 WL 1403516, at *2.

Furthermore, if, through the defense of reliance on advice of counsel, the client is also relying on the inference that contrary advice was not received, fairness requires that communications with all attorneys on the same subject be discoverable. See McKesson Information v. Trizetto Group, Inc., 2005 WL 2290191, at *1 (D. Del. 2005) ("[O]nce an alleged infringer relies on the opinion of counsel as a defense to the charge of willful infringement in one of my cases, the alleged infringer must disclose to the patentee 'all of the information it possessed prior to or at the time it obtained opinions of counsel as to the subject matters discussed in the opinions.' ").

Chabot v. Walgreens Boots All., Inc., No. 1:18-CV-2118, 2020 WL 3410638, at *5–6 (M.D. Pa. June 11, 2020).

> The rationale for this rule can be simply stated:
>
> There is an inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice. That party should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery. To do so would undermine the very purpose behind the exception to the attorney-client privilege at issue here—fairness.
>
> The party opposing the defense of reliance on advice of counsel must be able to test what information had been conveyed by the client to counsel and vice-versa regarding that advice—whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client. See In re ML–Lee Acquisition Fund II, L.P., 859 F.Supp. 765, 767 (1994).

Glenmede Tr. Co., 56 F.3d at 486.

Guided by these legal tenets, we believe that the plaintiffs have made a sufficient threshold evidentiary showing that individual defendants who have claimed that they were acting in good faith have also implied that they were guided by the advice of counsel in reaching the conclusion that their actions were appropriate. On these facts, the defense may not use the advice of counsel as both a sword and a shield, wielding the legal advice as a sword cutting at the heart of the plaintiffs' retaliation claims, while shielding their actual communications with counsel from any scrutiny. Therefore, absent some affirmative abandonment of any defense based upon reliance on counsel, these apparent claims of good faith based, in part, upon legal advice open the door to appropriate discovery regarding these communications. Indeed, to hold otherwise "would undermine the very purpose behind the exception to the attorney-client privilege at issue here—fairness." Id.

An appropriate order follows.

S/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

DATED: January 17, 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE, et al.,** | : | **Civil No. 3:21-CV-477** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SCHUYLKILL COUNTY** | : | |
| **COURTHOUSE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## Order

In accordance with the accompanying Memorandum, IT IS ORDERED THAT absent some affirmative abandonment by the defendants of any good faith defense based upon reliance on counsel, defense claims of good faith based, in part, upon legal advice open the door to appropriate discovery regarding these communications; and with respect to any of the adverse personnel actions taken against the plaintiffs allegedly in retaliation for reporting alleged workplace sexual harassment, to the extent that the defendants refer to advice or investigations by counsel as part of their good faith justification for their actions, the plaintiffs may inquire into the nature of the advice given, as well as the nature of the information shared with counsel.

So ordered this 17th day of January 2023.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge