**DEREK SMITH LAW GROUP, PLLC**
CATHERINE W. SMITH, ESQUIRE
Attorney ID No. 316291
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(267) 857-0832
catherine@dereksmithlaw.com
*Attorneys for Plaintiffs*

---

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANE DOE, et. al.**<br>**Plaintiffs,**<br><br>**v.**<br><br><br>**SCHUYLKILL COUNTY, et. al.**<br>**Defendants.** | **Civil Docket No: 3:21-CV-00477** |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CONTEMPT AND SANCTIONS
## FOR VIOLATIONS OF THE COURT'S CONFIDENTIALITY ORDER

Plaintiffs, Jane Doe, Jane Doe 2, Jane Doe 3, and Jane Doe 4, by and

through their undersigned counsel, move this Honorable Court for contempt and

sanctions against Defendant George Halcovage ("Defendant Halcovage") and his

counsel, Gerard J. Geiger, Esq. ("Attorney Geiger" and collectively with

Defendant Halcovage, the "Defendants") pursuant to Fed. R. Civ. P. 37 for

violating this Honorable Court's November 12, 2021 Stipulated Discovery

Confidentiality Order. *See* DKT 68.  Plaintiffs respectfully request this Honorable

Court enter the attached proposed Order to include: (i) finding the Defendants in

civil contempt for violating this Honorable Court's Stipulated Discovery

Confidentiality Order entered in this case; (ii) ordering the Defendants to pay

Plaintiffs' attorneys' fees and costs incurred as a result of this Motion; and (iii)

ordering such other relief as this Court deems proper.

## PRELIMINARY STATEMENT

On January 20, 2023, Defendant Halcovage approached an individual and

discussed the contents of a deposition, which is a violation of this Honorable

Court's November 12, 2021, Order. *Id*. Defendant Halcovage further disclosed the

identity of one of the Jane Doe plaintiffs in this matter. Despite numerous

restrictions concerning access to this information, including this Honorable Court's

Order, and after almost two years of constant reminders about the confidential

nature of the Plaintiffs' names and the content of depositions, Defendant

Halcovage, at best wantonly, released this information to an individual prohibited

by this Honorable Court's Order. However, it is clear, Defendant Halcovage's

action were intentional because there would have been no reason to approach the

individual, as he has not been employed by Defendant Schuylkill County since

January of 2013.  Furthermore, when confronted with the conversation, Defendant

Halcovage expressed no remorse, apology, or plan to ensure the least amount of

harm, and in fact, doubled down with additional false statements in another filing only days later.  This cavalier attitude about this Honorable Court's Order related to the confidential nature of the issues at hand speaks volumes.

Contempt and sanctions are justified given the egregious nature of this violation (as well as Defendant's pattern of behavior in this case), which now includes false statements under oath, perhaps as an attempt to intimidate potential witnesses in this matter.  In light of the severity of the situation and the utter disregard for this Honorable Court's Order, Plaintiffs also ask this Honorable Court for an award of attorneys' fees and costs to Plaintiffs for the unnecessary legal expenses they have been forced to incur as a result of Defendant Halcovage's inexcusable behavior.

## BRIEF STATEMENT OF FACTS

On March 16, 2021, Plaintiffs filed the present action against Defendants. *See* Dkt. 1.  As this Court has acknowledged, "this case involves allegations of abhorrent workplace misconduct at the Schuylkill County Courthouse involving alleged sexual harassment, assault, and predation coupled with assertions of official indifference to the plight of the alleged victims of this workplace violence." Dkt. 131. These allegations are brought by four (4) Plaintiffs, whose claims span over ten (10) years. *See* Dkt. 1.  Due to the sensitive nature of the

unlawful conduct alleged, Plaintiffs sought protection from disclosure of their

identities when they filed their claims using Jane Doe pseudonyms, when they

opposed Defendants Motion to Dismiss which included the request that this

Honorable Court order the Plaintiffs to reveal themselves by their full names or

have their case stricken, and when they sought an Order of this Honorable Court

permitting them to designate as "Confidential" "any information, document, or

thing, or portion of any document or thing, that … contains: (a) personnel and

employment files … (e) contains Plaintiffs' first and/or last name (maiden or

married) unless redacted to reflect the Plaintiffs' Jane Doe designations…" *See*

Dkt. 1. *See Also,* Dkt. 88, 98, and 99. *See Also,* Dkt. 67.

   On November 12, 2021, this Court issued a Discovery Confidentiality Order

governing the designation, disclosure, and use of confidential and sensitive

documents and information related to this matter.  *See* Dkt. 68. The Discovery

Confidentiality Order further governed the disclosure of deposition transcripts and

the content of depositions. *Id.* Specifically, paragraph six (6) of the Order states,

"No such deposition transcript shall be disclosed to any individual other than the

individuals described in Paragraph 4 above and the deponent during these thirty

(30) days, and no individual attending such a deposition shall disclose the contents

of the deposition to any individual other than those described in Paragraph 4 above

during said thirty (30) days." *Id.* at p. 5. The individuals described in paragraph

four (4) of the Order are: "(a) All Parties to this matter, counsel for the parties,

relevant in-house counsel for the Parties, secretaries or legal assistants, paralegals

and employees of the attorneys to the extent reasonably necessary to render

professional services in this litigation; (b) Outside experts or consultants … ; (c)

The Court, jury and court personnel under seal or with the Plaintiffs' Jane Doe

designation[s] being used … (d) Persons noticed for depositions together with legal

counsel on their behalf …; (e) vendors retained by or for the parties to assist in

preparing for pretrial discovery, trial and/or hearings … ; (f) Other persons only by

written consent of the producing party or upon Order by the Court …; (g) All

insurers, insurance adjusters, and insurance staff and their counsel …" *Id.* at p. 3-4.

On January 9, 2023, and January 10, 2023, counsel for all Defendants

deposed Plaintiff Jane Doe 3. *See* January 9, 2023, Deposition of Jane Doe 3, a true

and correct copy of the relevant portions of which are attached hereto as Exhibit A

(hereinafter "Ex. A"). *See Also,* January 10, 2023, Deposition of Jane Doe 3, a true

and correct copy of the relevant portions of which are attached hereto as Exhibit B

(hereinafter "Ex. B"). At the beginning of Jane Doe 3's deposition on January 9,

2023, undersigned, in an abundance of caution, requested that the parties stipulate

that the contents of the deposition would remain confidential for thirty (30) days

following the final transcript of Jane Doe 3's deposition. *See* Ex. A at p. 5 line 18

through p. 6 at line 10. While Attorney Geiger concurrence is not noted in the

transcript, the transcript does not indicate that he objected. *Id..* Additionally, it was heard by undersigned's paralegal, who was in attendance at the deposition. *See* Declaration of Alyssa DeBise, a true and correct copy of which is attached hereto as Exhibit C (hereinafter "Ex. C") at ¶ 26.

During Jane Doe 3's January 10, 2023, testimony she was questioned regarding a comment she made related to how Defendant Halcovage would order supplies to use for his personal insurance office. *See* Ex. B at p. 557 line 24 through p. 558 line 15. Jane Doe 3 testified that she made this comment because a former employee in the Defendant Schuylkill County's Commissioner's office had told her that. *Id.* Jane Doe 3, when asked, disclosed that the employee who had told her that information was a Mr. Paul Straka (hereinafter "Mr. Straka"). *Id.*

On January 21, 2023, Plaintiff Jane Doe 4 spoke with Mr. Straka. *See* Declaration of Jane Doe 4, a true and correct copy of which is attached hereto as Exhibit D at ¶ 2. Mr. Straka has not been employed by Defendant Schuylkill County since January of 2013. *Id.* at ¶ 5. During this conversation Mr. Straka informed Jane Doe 4 that on January 20, 2023, while at a funeral Defendant Halcovage approached him. *Id.* at ¶ 7-12. Mr. Straka further informed Jane Doe 4 that Defendant Halcovage stated to him words to the effect of, "I just wanted to let you [Mr. Straka] know that your name was brought up in depositions." *Id.* at ¶ 12. Mr. Straka told Jane Doe 4 that Defendant Halcovage stated that Jane Doe 3, using

her first name, "brought up your name and mentioned that you said that I used the county supplies for my insurance business." *Id.* at ¶ 13. Mr. Straka then informed Jane Doe 3 that he, Mr. Straka, and Defendant Halcovage had a brief conversation with Defendant Halcovage about what supplies he believed Defendant Halcovage used for his insurance business. *Id.* at ¶ 14. Jane Doe 4 informed Mr. Straka that she would need to inform her attorney of the conversation that she had with him, Mr. Straka, as she was concerned that Defendant Halcovage violated the Court's Confidentiality Order. *Id.* at ¶ 17.

On January 23, 2023, undersigned's paralegal, Alyssa DeBise (hereinafter "Ms. DeBise"), contacted Mr. Straka on undersigned's behalf. Ms. DeBise spoke with Mr. Straka for around five (5) minutes during which she explained that she would like to obtain information from him regarding his conversation with Defendant Halcovage on January 20, 2023, which he disclosed to Jane Doe 4. *See* Ex. C at ¶ 5. Mr. Straka informed Ms. DeBise that he wanted to speak with his attorney before he provided with the details of the conversation, he had with Defendant Halcovage. *Id.* at ¶ 7. Mr. Straka also informed Ms. DeBise that the company he currently works for has contracts with Defendant Schuylkill County and he, Mr. Straka, was concerned that speaking with our office would have an impact on those contracts. *Id.* at ¶ 8. Mr. Straka called back later the same day and again spoke with Ms. DeBise. *Id.* at ¶ 11. Mr. Straka informed Ms. DeBise that he

would be willing to provide information about his January 20, 2023, conversation with Defendant Halcovage. *Id.* at ¶ 11. Mr. Straka then provided Ms. DeBise with the information necessary to draft a Declaration on his behalf. *Id.* at ¶ 11-25. From the information he provided, Ms. DeBise drafted a Declaration for Mr. Straka's review and execution. *See* Draft Declaration of Paul Straka, a true and correct copy of which is attached hereto as Exhibit E.

On January 24, 2023, undersigned emailed Mr. Straka a copy of the Declaration that Ms. DeBise had prepared. *See* January 2023 email chain between Catherine W. Smith, Esq. and Paul Straka, a true and correct copy of which is attached hereto as Exhibit F. On January 27, 2023, Mr. Straka replied to undersigned's email and stated, "After further consideration and discussion with my attorney, Cheryl Allerton, I am going to pass on signing and subsequently involving myself with Jane Doe lawsuit.  At this time, I do not see that my information/declaration will be of any use to this case.  In addition, as stated, I am very cautious about inserting myself into this issue." *Id.*

On February 7, 2023, undersigned deposed Defendant Halcovage. *See* January 7, 2023, Deposition of Defendant George Halcovage, a true and correct copy of the relevant portions of which are attached hereto as Exhibit G. During the deposition of Defendant Halcovage unsigned asked Defendant Halcovage if he had recently spoken with Paul Straka. *Id.* at p. 784 line 3 through line 12. Defendant

Halcovage admitted that he was recently at a funeral that Mr. Straka was at and that Defendant Halcovage told Mr. Straka that, "I understand the he [Mr. Straka] knows that I purchased things for my insurance business." *Id.* When Defendant Halcovage was asked if he told Mr. Straka that he had hear that during Jane Doe 4's deposition he stated, "I didn't tell him where I heard it," and "you know, people are saying that I used county items for my insurance business." *Id.* at p. 784 lines 13 through line 24. Defendant Halcovage further testified that Mr. Straka had not been employed by the County since 2014, that Jane Doe 4's deposition testimony piqued his curiosity, and Defendant Halcovage provided no other reason that he approached Mr. Straka and discussed his alleged misuse of County funds/property. *Id.* at p. 788 line 2 through line 4. Finally, Defendant Halcovage outright denied that he told Mr. Straka that Jane Doe 4 testified, at a deposition, that Defendant Halcovage's, allegedly misused County funds/property. *Id.* at p. 789 line 2 through line 4.

## **ARGUMENT**

Defendant Halcovage's conduct with respect to his conversations with Paul Straka not only violated the Stipulated Discovery Confidentiality Order, which his counsel agreed to on his behalf, and which this Honorable Court Ordered, but it

also borders on witness intimidation.  This warrants a finding of civil contempt,

imposition of sanctions, and an award of attorneys' fees and costs.

"Trial courts have wide discretion in fashioning remedies, including sanctions,

where appropriate in the event of . . . violations of orders."  *McNulty v. Middle*

*East Forum*, No. CV 19-5029, 2020 WL 7769737, at *2 (E.D. Pa. Dec. 30, 2020)

(citation omitted); see also *LabMD, Inc. v. Tiversa Holding Corp.*, No. CV 15-92,

2019 WL 3881700, at *13 (W.D. Pa. Aug. 16, 2019) ("Federal Rule of Civil

Procedure 37 authorizes a court to impose sanctions against a party that fails to

comply with a court order.").  If a sanction is just and "specifically related to the

specific claim that was at issue in the order" that was violated, a court may impose

it.  *Id.* at *14 (citation omitted); *see Id.* at *19 (where a party failed to comply with

the court's deposition protective order in several depositions, imposing several

sanctions including precluding the defiant party from using any testimony elicited

from those depositions for any purpose.)

"Sanctions for civil contempt may be imposed to coerce obedience to a court

order, or to compensate the party pursuing the contempt action for injuries

resulting from the contemptuous behavior, or both."  *Grant Heilman Photography,*

*Inc. v. Pearson Educ., Inc.*, No. CV 11-4649, 2018 WL 2414984, at *3 (E.D. Pa.

May 29, 2018) (citation and quotations omitted).  A defiant party is liable for civil

contempt if the complainant shows by clear and convincing evidence that the

defiant party "violate[d] a court order with actual notice that the order ha[d] been

issued."  Halderman, 154 F.R.D. at 608 (quoting *Quinter v. Volkswagen of Am.*,

676 F.2d 969, 973 (3d Cir. 1982)).  The complainant can carry this burden by

showing that "(1) a valid order of the court existed; (2) the opposing party had

knowledge of the order; and (3) the opposing party disobeyed the order." Grant

Heilman Photography, Inc, 2018 WL 2414984, at *3 (citation and quotations

omitted).  That a party acted in "good faith" despite the violation is not a defense to

civil contempt.  McNulty, 2020 WL 7769737, at *3; see also *Grider*, 2006 WL

7353319, at *3 (E.D. Pa. Mar. 30, 2006) ("[D]efendants assert that simply because

they rectified the situation as soon as they were alerted to it by counsel for

plaintiffs, this absolves them of any responsibility for the improper dissemination

in the first instance.  This would give any party license to disregard the terms of a

protective Order under the guise that the disclosure was inadvertent and be

immune from sanctions . . . .").

The power to punish contempt "is a necessary and integral part of the

independence of the judiciary and is absolutely essential to the performance of

the duties imposed on them by law. Without it they are mere boards of

arbitration, whose judgments and decrees would be only advisory." *Gompers*

*v. Buck's Stove & Range Co.,* 221 U.S. 418, 450 (1911).  The Court has broad

discretion to fashion contempt sanctions.  *See Northeast Women's Center, Inc. v.*

*McMonagle*, 939 F.2d 57, 70 (3d Cir. 1991); *Delaware Valley Citizens' Council*

*for Clean Air v. Commonwealth of Pennsylvania*, 678 F.2d 470, 478 (3d Cir.),

*cert. denied*, 459 U.S. 963 (1982); *MacDermid, Inc. v. Selle*, 577 F. Supp. 2d

599, 601 (D. Conn. 2008).  For example, the Court can impose fines, *see*

*MacDermid*, 577 F. Supp. 2d at 602; *Howe Laboratories, Inc. v. Stevick*, 1997

WL 340916 at *1 (E.D.N.Y. June 18, 1997), or order the incarceration of the

party who has violated the Court's order.  *See Northeast Women's Center*, 939

F.2d at 70; *Delaware Valley Citizens' Council*, 678 F.2d at 478; *Clearone*

*Communications, Inc. v. Chiang*, 670 F. Supp. 2d 1248, 1251 (D. Utah 2009).

Finally, the Court can award attorneys' fees as well as the other expenses

(including the expenses of a party's time) involved in demonstrating a violation

of the Court's order.  *See Robin Woods*, 28 F.3d at 401. Further, Rule 37 provides

for the sanction of "reasonable expenses, including attorney's fees," against "the

disobedient party, the attorney advising that party, or both," unless the failure was

"substantially justified or other circumstances make an award of expenses

unjust." Fed. R. Civ. P. 37(b)(2)(C).

On November 12, 2021, this Honorable Court entered a Discovery

Confidentiality Order that now forms the basis of this Motion. The Discovery

Confidentiality Order, which is binding on all parties, and their attorneys,

"govern[s] the pretrial production, pretrial disclosure… identified by the parties as

confidential in accordance with the standards set forth in <u>Pansy v. Borough of</u>

<u>Stroudsburg</u>, 23 F.3d 722 (3d Cir. 1994)…" *See* Dkt. 68 at p. 1.  The Discovery

Confidentiality Order further provides that,

> "With respect to any depositions that involve a disclosure of
> Confidential material of a party to this action, such party shall have
> until thirty (30) days after receipt of the deposition transcript within
> which to inform all other parties which portions, and/or exhibits, of
> the transcript that should be designated as Confidential. Such period
> for notification may be extended by agreement of the parties. No such
> deposition transcript shall be disclosed to any individual other than
> the individuals described in Paragraph 4 above and the deponent
> during these thirty (30) days, and no individual attending such a
> deposition shall disclose the contents of the deposition to any
> individual other than those described in Paragraph 4 above during
> said thirty (30) days."

*Id.* at p. 6.

The Discovery Confidentiality Order clearly instructs that the contents of

depositions may not be disclosed to someone such as Mr. Straka. This conduct

constitutes a brazen violation of this Honorable Court's direction, compelling

a finding of civil contempt and impositions of sanctions.

## CONCLUSION

For the foregoing reasons, this Court should enter an Order (i) finding the
Defendants in civil contempt for violating this Honorable Court's Stipulated
Discovery Confidentiality Order entered in this case; (ii) ordering the Defendants
to pay Plaintiffs' attorneys' fees and costs incurred as a result of this Motion; and
(iii) ordering such other relief as this Court deems proper.

## CERTIFICATION

Prior to filing this Motion, Plaintiffs, by and through their counsel,
conducted a meet-and-confer with Attorney Geiger, counsel for Defendant
Halcovage, and were unable to resolve this matter.

Dated: February 14, 2023

Respectfully Submitted,
**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiffs*

By: */s/ Catherine W. Smith, Esq*
    Catherine W Smith, Esquire
    1835 Market Street, Suite 2950
    Philadelphia, Pennsylvania 19103