**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANE DOE, et al.,** | : | **Civil No. 3:21-CV-477** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SCHUYLKILL COUNTY COURTHOUSE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM AND ORDER**

## I. Factual and Procedural Background

This case presents allegations of workplace misconduct at the Schuylkill County Courthouse involving alleged sexual harassment, assault, and predation coupled with assertions of official indifference to the plight of the alleged victims of this workplace violence and retaliation against those who raised workplace sexual harassment concerns. The parties are now engaged in a somewhat contentious course of discovery aimed at evaluating the evidence relating to these allegations.

In the course of this ongoing discovery, a potentially grave issue has now arisen, an alleged violation of this Court's confidentiality orders. Because of the profoundly personal nature of the matters that lie at the heart of this litigation, on November 12, 2021, we issued a Discovery Confidentiality Order regarding the

designation, disclosure, and use of confidential and sensitive documents and information related to this litigation. (Doc. 68).

This court order specifically applied to the disclosure of deposition transcripts and the content of depositions. (Id.) Specifically, paragraph six (6) of our Order cloaked designated depositions in confidentiality for at least 30 days, stating in clear and precise terms that:

> No such deposition transcript shall be disclosed to any individual other than the individuals described in Paragraph 4 above and the deponent during these thirty (30) days, and *no individual attending such a deposition shall disclose the contents of the deposition to any individual* other than those described in Paragraph 4[1] above during said thirty (30) days.

(Id., at 5) (emphasis added).

At the time we entered this order, it was our expectation that all parties and participants in this litigation would scrupulously comply with the court's directives,

[1] The individuals described in paragraph four (4) of the Order are: "(a) All Parties to this matter, counsel for the parties, relevant in-house counsel for the Parties, secretaries or legal assistants, paralegals and employees of the attorneys to the extent reasonably necessary to render professional services in this litigation; (b) Outside experts or consultants . . . ; (c) The Court, jury and court personnel under seal or with the Plaintiffs' Jane Doe designation[s] being used . . . (d) Persons noticed for depositions together with legal counsel on their behalf . . . ; (e) vendors retained by or for the parties to assist in preparing for pretrial discovery, trial and/or hearings . . . ; (f) Other persons only by written consent of the producing party or upon Order by the Court . . .; (g) All insurers, insurance adjusters, and insurance staff and their counsel . . ."

directives which explicitly forbade the disclosure of the contents of depositions deemed confidential.

The sanctions motions filed by the plaintiffs indicates that Defendant Halcovage has not fully complied with this order. Specifically, in January of 2023, one of the plaintiffs, Jane Doe 3, was deposed. Mr. Halcovage attended this deposition, and at the outset of the deposition counsel for the plaintiff invoked the confidentiality provisions of this court's order. In the course of this deposition, Jane Doe 3 testified that she had been informed by a former county employee, P.S.[2], that Defendant Halcovage had ordered supplies through the county which he had used in his private insurance business. Shortly after this deposition testimony was elicited from Jane Doe 3, on January 21, 2023, Jane Doe 4 spoke to P.S., who has not been in the county's employ for the past decade. At that time, according to Jane Doe 4, P.S. recounted encountering Halcovage at a funeral on January 20, 2023. At that time, it was reported that Halcovage initiated a discussion with P.S. concerning the alleged misuse of county supplies by Halcovage, a matter that was addressed and cloaked in confidentiality during the deposition of Jane Doe 3.

Halcovage himself was questioned about this incident during a February 7, 2023 deposition. (Doc. 200, Ex. G). While the tone and tenor of the deposition

---

[2] We are identifying this third party in this fashion through a pseudonym out of respect for this individual's personal privacy.

excerpt provided to us is notable in its evasiveness, during his testimony Halcovage acknowledged speaking to P.S. about this office supply issue. Moreover, Halcovage's testimony also makes it abundantly clear that what inspired this conversation was the substance of the confidential deposition testimony which Halcovage had heard from Jane Doe 3.[3] As Halcovage himself stated under oath:

> Q. So why -- from 2014 until 2023, what happened to make you go up to [P.S.] and ask him about what he thought about your purchasing of insurance supplies through the county, other than [Jane Doe 3's] deposition?
>
> A. It piqued my curiosity.
>
> Q. What piqued your curiosity?
>
> A. The deposition, it did.

(Id.)

Thus, Halcovage conceded that he engaged in a discussion with P.S. regarding a subject that was part of the content of this deposition testimony. Further, Halcovage

---

[3] We note that the parties' pleadings discuss at some length the reluctance of P.S. to provide a declaration detailing his conversation with Halcovage. Thus, the defendant would invite us to discount this information entirely as unreliable hearsay even though Halcovage has reluctantly acknowledged much of this alleged conduct. The plaintiffs, in turn, would urge us to engage in an evidentiary inquest, hauling P.S. before this court to testify. Because we read Halcovage's own deposition as essentially admitting to behavior which in our view violated the letter and spirit of our prior orders, we will decline either of these invitations. Instead, we will address this motion based upon what we see as conduct, acknowledged by Halcovage, which we find inappropriately evaded the plain meaning of our order.

stated, albeit reluctantly, that this discussion was inspired by the deposition testimony which "piqued" Halcovage's desire to discuss these matters that had been cloaked in confidentiality with a person outside the litigation. Nonetheless, Halcovage seemingly suggested that his conduct was entirely appropriate because: "I did not talk deposition testimony. I talked to him about –that – was there a concern when he was there that I had used things for personal use in my insurance business." (Id.) Thus, in his testimony, Halcovage seemed to draw some sort of strained and metaphysical distinction between disclosing the contents of a deposition by discussing matters which were embraced in the substance of confidential deposition testimony and disclosing the fact of the deposition itself.

This behavior by Halcovage was particularly problematic since earlier in this litigation we had specifically addressed concerns voiced by the plaintiffs that Halcovage's presence at depositions could lead to intimidation and litigation misconduct. Thus, while we denied a request to exclude Halcovage from these depositions at the outset of discovery, we explicitly warned Halcovage of his responsibility to act in a scrupulously correct fashion. Doe v. Schuylkill Cnty. Courthouse, No. 3:21-CV-477, 2022 WL 1110319, at *2 (M.D. Pa. Apr. 13, 2022). This prior order should have put Halcovage on notice of his obligation to avoid any appearance of impropriety. Yet, despite this admonition we find ourselves presented with admitted conduct by this party that, at best, can be seen as an evasive attempt to

skirt the confidentiality order approved by his counsel and adopted by this court. Moreover, at its worst, this conduct seems to violate both the spirit and the letter of the court's stipulated confidentiality order, which instructed Halcovage to refrain from revealing the contents of any confidential deposition testimony.

It is this conduct which inspired the plaintiffs' motion for sanctions or contempt. (Doc. 200).[4] This motion is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we will grant this motion in part, while fashioning an appropriately narrow sanction to specifically address and prevent this conduct in the future.

## II. Discussion

It is well settled that a district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders or engaging in litigation misconduct. See, e.g., Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir. 2007). Indeed, the inherent power of the Court to act in this area has long been recognized by the United States Supreme Court, which has held that:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their

[4] We note that the plaintiffs' motion initially sought to sanction both Halcovage and his counsel, but the plaintiffs have prudently withdrawn their motion with respect to defense counsel. This was an appropriate course for the plaintiffs to take since defense counsel, who is faced with a case and client that may present its share of unusual challenges, has comported himself honorably and well in this litigation in our view.

> institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing Hudson). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); see also Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962).

Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

Decisions regarding how to exercise this inherent power to sanction misconduct rest in the sound discretion of the court and, if a district court imposes sanctions pursuant to its inherent authority, such a sanctions decision may only be reviewed for abuse of discretion, which will be found only where "the court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 181 (3d Cir. 2002) (quoting In re Orthopedic Bone Screw Products Liability Litig., 193 F.3d 781, 795 (3d Cir. 1999)).

Yet while this court doubtless has the discretion to order imposition of sanctions in appropriate cases, the exercise of this discretion is guided by certain basic principles. Foremost among these principles is the tenet that sanctions should always

be narrowly tailored to meet the misconduct and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court. See Klein v. Stahl, GMBH & Co., Maschinefabrik, 185 F.3d 98 (3d. Cir. 1999). This basic, but pivotal, aspect of the exercise of discretion in this area, has been voiced in many ways. Thus, it is well established that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers, 501 U.S. at 44-45 (citation omitted). Therefore, in exercising this authority we are cautioned that:

> [A] district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified. In exercising its discretion under its inherent powers, the court should be guided by the same considerations that guide it in the imposition of sanctions under the Federal Rules. First, the court must consider the conduct at issue and explain why the conduct warrants sanction.

Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d at 74. Moreover,

> [H]aving evaluated the conduct at issue, the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate. Although the court need not "exhaust all other sanctioning mechanisms prior to resorting to its inherent power" (Landon v. Hunt, 938 F.2d at 450, 454 (3d Cir.1991)), the court must explain why it has chosen any particular sanction from the range of alternatives it has identified. See Poulis, 747 F.2d at 868 (sanctions under Fed.R.Civ.P. 16 and 37).

Id.

Likewise, Rule 37 of the Federal Rules of Civil Procedure also recognizes and permits imposition of sanctions upon parties who shirk or unjustifiably ignore their responsibility in civil proceedings. See Fed. R. Civ. P. 37(b) and (d). Thus, under Federal Rule of Civil Procedure 37(b)(1), a party may be sanctioned for failure to comply with a court order. Fed. R. Civ. P. 37(b)(1). Accordingly, in all of its varied forms, litigation misconduct may, and properly should, be the subject of sanctions. See Bartos v. Pennsylvania, No. CIV.1:08-CV-0366, 2010 WL 1816674, at *5 (M.D. Pa. May 5, 2010). Further, as we have previously noted for Mr. Halcovage, among the panoply of remedies available to the court is the exclusion of a non-testifying party from the depositions of other witnesses or parties. Doe v. Schuylkill Cnty. Courthouse, No. 3:21-CV-477, 2022 WL 1110319, at *2 (M.D. Pa. Apr. 13, 2022).

Judged by these standards, we have little difficulty concluding that Halcovage's admitted conduct was improper. Halcovage had been put on notice of his obligation to refrain from inappropriate behavior during depositions. Halcovage, through his counsel, had also agreed to a stipulated confidentiality order. (Doc. 68). That order cloaked depositions in confidentiality for at least 30 days and stated in clear and precise terms that:

> No . . . deposition transcript shall be disclosed to any individual . . . during these thirty (30) days, and *no individual attending such a deposition shall disclose the contents of the deposition to any individual* . . . during said thirty (30) days.

(Id., at 5) (emphasis added).

Thus, by its express terms this court order protected both deposition transcripts and the contents of depositions. In our view, any discussion of the substance of what is said in the course of a deposition entails a disclosure of the contents of that deposition. It is of no moment that the person engaging in the improper disclosure does not also label the information disclosed as the contents of a deposition. The information disclosed is the contents of the deposition regardless of whether it is labeled as such.

We are not alone in this understanding. Rather our understanding derives from the plain meaning of the word contents. For example, the Merriam-Webster Dictionary defines content or contents to include the substance, gist, meaning, or significance of information. https://www.merriam-webster.com/dictionary/content. Likewise, the Britannica Dictionary includes in the definition of content and contents as "the ideas, facts, or images that are" embodied in some written work. https://www.britannica.com/dictionary/content. Under either of these definitions, what was said in the deposition constituted the contents of that deposition. Nonetheless, it is entirely undisputed that shortly after he learned of an allegation of his own misuse and misappropriation of county property in the course of a deposition he attended, Halcovage took it upon himself to share the substance, gist, and facts asserted in this deposition with a third party who was outside this litigation.

Recognizing that words having meaning, we find that Halcovage's conduct plainly disclosed the contents of this deposition at a time when those contents were entitled to protection under our order.

Further, it is unmistakably clear that the deposition testimony was what inspired Halcovage to make this disclosure. Indeed, Halcovage admitted as much in his deposition, stating that Jane Doe 3's deposition testimony was what "piqued" his interest in making this disclosure. Moreover, we categorically reject the notion advanced by Halcovage in his deposition that he should somehow be absolved from any responsibility for violating this order through the simple expedient refraining from explicitly mentioning the fact that the source of this information was a protected deposition.[5] In our view, Halcovage's claimed distinction between disclosing the contents of a deposition and further revealing the fact that the information came from a deposition is metaphysical, meaningless, and approaches mendacity. It strains credulity to believe that an individual of Halcovage's intelligence and sophistication would not have recognized the highly problematic nature of this conduct. Rather, the

[5] We note that some information given to the court by the plaintiffs regarding Mr. Halcovage's encounter with P.S. indicates that Mr. Halcovage did, in fact, mention that what he was talking to P.S. about came up in a deposition. (Doc. 200, Exs. C, D, E). For his part, Halcovage has denied expressly referring to the deposition when discussing this issue with P.S. However, because we regard Halcovage's conduct as a disclosure even if he did not expressly refer to the deposition we need not resolve this dispute.

reasonable inference which flows from Halcovage's own conduct and testimony on this score is that the defendant believed he had found some clever means of evading and avoiding this court's order. On this score Halcovage was simply wrong. The law does not tolerate or condone such cynicism.[6]

But even if we gave Halcovage the benefit of every doubt and concluded that he was as credulous and confused as he professed to be, we would still find that some immediate corrective action is necessary given this breach of our prior order. Accordingly, to correct and avoid this sort of misconduct in the future we will enter an order which accomplishes the following:

First, Halcovage shall read, review, and gain a thorough understanding of all of this court's orders governing this litigation.

Second, with respect to the direct or indirect disclosure of confidential discovery materials, including depositions, Halcovage is instructed, consistent with the plain meaning of the word contents, that any disclosure of the gist, substance, or

---

[6] For the defendant's benefit, we share a simple hypothetical which should underscore this elementary principle and illuminate the inappropriateness of his action. Assume hypothetically that in his deposition Halcovage testified to some deeply personal and embarrassing matters. Given Halcovage's apparent interpretation of our order, the other participants in this litigation would be free to wander about the community discussing these profoundly personal and confidential matters, provided they refrained from specifically referencing the deposition testimony. If this were to occur to George Halcovage he would be fully warranted in feeling that he had been treated unfairly. The same principle which protects Halcovage from such disclosures applies with equal force to disclosures that he might wish to make to others.

facts set forth in discovery materials deemed confidential constitutes a disclosure and may only take place as authorized by the court.

Third, Halcovage is admonished that it is not a defense to a claim of improper disclosure to assert that he did not explicitly reference the discovery materials when making the disclosure.

Fourth, Halcovage is advised that he should always err on the side of treating material as confidential as this litigation proceeds forward.

Fifth, if Halcovage has any doubts or questions regarding whether a specific third-party disclosure is appropriate, he must first discuss that proposed disclosure with his counsel before making any disclosure.

Sixth, if upon consultation with counsel questions remain regarding whether a particular disclosure is authorized, that matter shall be brought to the court's attention prior to any disclosure.

Furthermore, in order to ensure Halcovage's complete understanding with these requirements, it will be ordered that on or before April 17, 2023, the defendant will sign and file with the court an attestation indicating that the defendant understands and has agreed to comply with all court orders in this case. Halcovage must further acknowledge that failures to comply with our orders may result in additional sanctions.

Moreover, in order to avoid any further recurrence of this conduct pending completion of the steps outlined above, Halcovage may not have access to any confidential discovery materials, nor may he attend depositions until after he has filed the attestation form directed by the court.

Finally, if upon review of this order and the other related discovery orders in this case, Halcovage has any lingering confusion regarding his responsibilities as a party in this lawsuit which render him unable to sign the attestation required by the court, he shall notify his counsel, and the court will schedule a court proceeding which Halcovage will attend in person in order to address and fully resolve these issues.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANE DOE, et al.,** | : | **Civil No. 3:21-CV-477** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SCHUYLKILL COUNTY COURTHOUSE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

AND NOW, this 3rd day of April, 2023 in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the plaintiffs' motion for sanctions, (Doc. 200), is GRANTED in part, and IT IS FURTHER ORDERED that:

First, Halcovage shall read, review and gain a thorough understanding of all of this court's orders governing this litigation.

Second, with respect to the direct or indirect disclosure of confidential discovery materials, including depositions, Halcovage is instructed, consistent with the plain meaning of the word contents, that any disclosure of the gist, substance, or facts set forth in discovery materials deemed confidential constitutes a disclosure and may only take place as authorized by the court.

Third, Halcovage is admonished that it is not a defense to a claim of improper disclosure to assert that he did not explicitly reference the discovery materials when making the disclosure.

Fourth, Halcovage is advised that he should always err on the side of treating material as confidential as this litigation proceeds forward.

Fifth, if Halcovage has any doubts or questions regarding whether a specific third-party disclosure is appropriate, he must first discuss that proposed disclosure with his counsel before making any disclosure.

Sixth, if upon consultation with counsel questions remain regarding whether a particular disclosure is authorized, that matter shall be brought to the court's attention prior to any disclosure.

Furthermore, in order to ensure Halcovage's complete understanding with these requirements, IT IS ORDERED that on or before **April 17, 2023**, the defendant will sign and file with the court an attestation, as set forth below, indicating that the defendant understands and has agreed to comply with all court orders in this case. Halcovage must further acknowledge that failures to comply with our orders may result in additional sanctions.

Moreover, in order to avoid any further recurrence of this conduct pending completion of the steps outlined above, Halcovage may not have access to any

confidential discovery materials, nor may he attend depositions until after he has filed the attestation form directed by the court.

Finally, if upon review of this order and the other related discovery orders in this case, Halcovage has any lingering confusion regarding his responsibilities as a party in this lawsuit which render him unable to sign the attestation required by the court, he shall notify his counsel, and the court will schedule court proceeding which Halcovage will attend in person in order to address and fully resolve these issues.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

**ATTESTATION**

Pursuant to Title 28, United States Code, Section 1746, I attest as follows: I have read, understand, and agree to comply with all court orders in this case. I acknowledge that failures to comply with court orders may result in additional sanctions against me.

______________________________
George Halcovage, Jr.

DATED:______________