IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE, et al.,** | : | Civil No. 3:21-CV-477 |
| **Plaintiffs,** | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SCHUYLKILL COUNTY COURTHOUSE, et al.,** | : | |
| **Defendants** | : | |

# MEMORANDUM AND ORDER

## I. Factual Background

This case—which involves allegations of workplace misconduct at the Schuylkill County Courthouse involving alleged sexual harassment, assault, and predation coupled with assertions of official indifference to the plight of the alleged victims of this workplace violence—comes before us for consideration of a discovery dispute. The allegations set forth in the Doe complaint span a number of years, and involve a number of different defendants, but the claims alleged in this case drew to a close in 2021. (Doc. 63).

Set against the backdrop of these claims, the parties now have a dispute regarding the relevance and discoverability of a report prepared by Attorney Denise Elliott which examined a somewhat temporally and topically unrelated allegation, an

assertion that in 2023 Doreen Kutzler played a role in declining to give a woman named Deborah Twigg an interview for an HR vacancy position at Schuylkill County. The plaintiffs suggest that this information would be discoverable because it shows some decision-making role played by Kutzler in HR matters, albeit years after the events set forth in the complaint. Moreover, the plaintiffs also indicate that they believe that Twigg, who was formerly employed by the county, was denied an interview because she previously opposed the sexual harassment of the named plaintiffs. The defendants oppose disclosure of this report noting: (1) that the report does not support a finding that Twigg was denied an interview because of her prior opposition to the harassment of the Doe plaintiffs; (2) that the report indicates that Ms. Kutzler was an employee of a separate entity, Hubric Resources, at the time of the events relating to Ms. Twigg; and (3) that the matters encompassed in Attorney Elliott's report are temporally and topically remote from the claims in this lawsuit.

When this matter was first brought to our attention, we directed the parties to submit Attorney Elliott's report of her inquiry to us for *in camera* review. Having engaged in that review, as discussed below, we find that the matters encompassed in this report are too attenuated from the claims in the Doe litigation to warrant disclosure of this report. Therefore, this request for disclosure of the report will be denied.

## II. **Discussion**

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines

the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter[1] that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Accordingly, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("Although 'the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.' Courts will not permit discovery where a request

---

[1] We note that the Elliott is marked confidential and privileged, but no one has asserted claims of privilege over this document. Therefore, we will evaluate this discovery request focusing on questions of relevance and proportionality.

4

is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information") (internal citations omitted)).

Therefore, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus, we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place

in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

In this case we are called upon to assess the relevance and proportionality of a discovery demand that seeks a report summarizing an inquiry into an HR matter which is not directly related to the claims in this lawsuit; namely, a decision in 2023 to not offer an interview to Ms. Twigg, a former county employee who had applied for an HR vacancy at Schuylkill County, after having resigned from a job at the county in 2020. In evaluating the relevance or proportionality of this discovery demand we begin by noting that the 2023 decision to decline to interview Ms. Twigg took place several years after the matters which form the gravamen of this lawsuit.

Thus, there is a significant temporal gulf between these events, a fact which makes the relevance of this 2023 employment action attenuated from the claims in this lawsuit.

The plaintiffs attempt to overcome this temporal gulf with claims of topical relevance, but we find that these efforts are unavailing. Thus, while Ms. Twigg is not a party in the underlying litigation, the plaintiffs indicate that she has been identified as a potential witness in this case. The plaintiffs then seemingly focus on her status as a potential witness as the reason Ms. Twigg was not offered an interview. However, the Elliott report rejects this assertion. Therefore, the report itself lends no support to this proposition. The plaintiffs also argue that this report is relevant because it shows some decision-making role played by Kutzler in HR matters, albeit regarding an unrelated matter which occurred years after the events set forth in the complaint. According to the plaintiffs this information is relevant to their claim in the amended complaint that Kutzler "had hiring, supervisory, and firing authority over the Plaintiffs." (Doc. 63, ¶ 38). While we understand the inference the plaintiffs invite us to draw, we believe that the events described in the Elliott report are simply too attenuated to support a supervisory inference relating to Ms. Kutzler's tenure with the county as described in the amended complaint.

In this regard, it is important to note that the events alleged in the amended complaint span a seven-year period from 2014 through September 2021. (Id. ¶¶ 57-

248). Yet, the amended complaint indicates that Ms. Kutzler played an extremely limited role in the HR department at the county during this period, and only worked in this HR capacity for a very brief period of time from "around September 2020, through the date Defendant Kutzer's Human Resources (hereinafter referred to as 'HR') contract with Defendant SC expired, around January 2021." (Id. ¶ 40). Further, it seems undisputed that in 2023 Kutzler was employed by a private contractor, Hubric Resources, and was not a county employee. Therefore, the role that Ms. Kutzler performed for Hubric Resources in 2023 as it related to the decision to interview Ms. Twigg tells us very little about the positions and responsibilities she exercised with the county several years earlier. Thus, we find that this information is not directly relevant to the claims or defenses in this lawsuit.

 Further, we recognize that this discovery may open up a collateral line of inquiry into the merits of what would essentially be claims of retaliation by Ms. Twigg in 2023. In sum, this proposed discovery could quickly devolve into an inquest into what Ms. Twigg claims was a retaliatory failure to interview her for a job in 2023, a claim that was rejected by the Elliott report and is removed from the primary claims in this case. Given the marginal relevance of this information, and its potential to open up these collateral lines of inquiry, we find that this discovery is not relevant to any party's claim or defense and is not proportional to the needs of the case. Therefore, we will deny this request.

An appropriate order follows.

## III.  Order

For the foregoing reasons the plaintiffs' request for the disclosure of the Elliott report is DENIED.

So ordered this 14th day of August 2023.

> *S/ Martin C. Carlson*
> Martin C. Carlson
> United States Magistrate Judge