**NEWMAN | WILLIAMS**
A PROFESSIONAL CORPORATION

BY: GERARD J. GEIGER, ESQUIRE         Attorney for Defendant George Halcovage
IDENTIFICATION NO. 44099
LAW OFFICES
712 MONROE STREET
STROUDSBURG, PA 18360-0511
(570) 421-9090 (voice)
(570) 424-9739 (fax)
ggeiger@newmanwilliams.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, et al.<br>　　　Plaintiffs<br><br>v.<br><br>SCHUYLKILL COUNTY COURTHOUSE, et al.,<br>　　　Defendants | No. 3:21-cv-00477<br><br>Jury Trial Demanded. |

# Reply Brief in Support of Motion for Summary Judgment by Defendant, George Halcovage

## I.  Procedural History

On July 28, 2023, defendant Halcovage filed a motion for partial summary judgment (Doc. No. 236).  On August 14, 2023, Halcovage filed his LR 56.1 Statements of Fact and a supporting brief.

The Doe Plaintiffs filed an opposing brief on September 20, 2023 (Doc. No. 268).

1

This is Halcovage's Reply brief.

## II. Facts

The parties' respective versions of the facts have been exhaustively described in the pleadings and summary judgment filings. Halcovage will not restate all those details now except to give a "30,000-foot perspective" and to comment briefly on the plaintiffs' response.

Halcovage has been a Schuylkill County commissioner since 2012.[1] He had a sexual relationship with Doe 1 for years.[2] During those years and until the outbreak of the pandemic, Doe 1 told Halcovage that she loved him, borrowed money from him, helped him with his political campaigns, sought out his advice, and never complained to anyone in the County about their relationship.[3] She considered him to be her friend.[4] Years later, she explains that she was intimate with Halcovage only because she feared he was so powerful, she would have lost her job if she said "no."

In fact, she never lost her job and, the power she attributed to his role as a commissioner, was exaggerated.

The facts are undisputed that the Commissioners have no power to

---

[1] Halcovage Statement of Facts, ¶ 3.
[2] Halcovage SF, ¶ 44.
[3] Halcovage SF, ¶ 45 — 48.
[4] Halcovage SF, ¶ 49,

suspend employees.[5] Moreover, no <u>individual</u> commissioner has the power to terminate. Terminations must be done by majority vote at a public meeting.[6]

The relationship between Halcovage and Does 2 to 4 was not intimate. They sue because over the years, they heard Halcovage make comments they interpreted as sexual.[7] They were annoyed when the Commissioner spent too much time in their courthouse offices discussing personal matters or when he visited them at their homes. It was not until after they filed this lawsuit that they became fearful for their personal safety. Part of this was incited by the County Sheriff calling a meeting of all the row officers to report that:

    A. Halcovage's wife left him and was filing for divorce;

    B. His children barred him from seeing his grandchildren; and

    C. His church kicked him out of the parish.

Believing that anyone facing such trauma could become dangerous, they sought Halcovage's banishment from the courthouse.

The Does perception of the danger Halcovage posed was not mollified

---

[5] Halcovage SF, ¶ 7.
[6] Halcovage SF, ¶ 4.
[7] As an example, when Doe 2 emailed Halcovage about eggs benedict, he replied: ""eggs with a special sauce …. Hmmmm." Second Amended Complaint, ¶ 68.

3

when they learned that none of these rumors were true.

The Does also express continuing emotional trauma merely by seeing Halcovage, not by any threats he made. This, despite Halcovage's lack of any criminal history, no evidence he has ever assaulted anyone in his entire life and, rumors to the contrary, he owns no guns. [8]

### III.   Issues

These were the issues Halcovage raised in his principal brief.

A. Can claims be stated against Halcovage individually for retaliation and for violating plaintiffs' equal protection rights given:

    1.  the lack of evidence of Halcovage's involvement in the discovery record;

    2.  Halcovage was one of three votes on a board of commissioners and had no authority to act individually?

B.  Does Halcovage have legislative immunity from suit for his votes on the board of commissioners?

C. Does Halcovage have qualified immunity from suit?

D. Does Halcovage's conduct vis-a-vis the plaintiffs qualify as so outrageous and beyond all bounds of decency to support a claim for IIED?

---

[8] Halcovage SF, ¶ 41.

## IV. Argument

### A. Retaliation

In his principal brief, Halcovage claimed the plaintiffs failed to state a cause of action against him for retaliation.

Plaintiffs' claims include charges by Does 3 and 4 of retaliatory misconduct for modifying the tax claim and assessment offices, pursuing an unjustified investigation into their inappropriate LEXIS/NEXIS searches, and considering their terminations at Commissioners' meetings. There were also references that two Does had their offices moved to the County's 410 Building and the County's failure to provide them with a decent place to work and the tools necessary for them to do their jobs.

Halcovage does not intend to repeat the arguments from his principal brief but offers the following observations regarding the Does' response.

### 1. Halcovage was one of three votes

The Does do not address Halcovage's argument that as a county commissioner, he has no legal ability to terminate the Does and is just 1 of 3 votes. Since he could not act individually, as a matter of law, he cannot be individually liable for votes cast at a public meeting, including his vote to restructure the tax claim and assessment offices.

### 2. Halcovage did not suspend Does 3 and 4

Halcovage testified without rebuttal that commissioners have no role in suspending county employees and that he personally played no part in the suspension of Does 3 and 4 for their LEXIS-related misconduct.[9] This is a material fact plaintiffs cannot and did not dispute.

### 3. Halcovage did not move any of the Does to the 410 Building

Halcovage testified he was not consulted about the Does move to the 410 Building and setting up their accommodations there. Plaintiffs offered nothing to dispute this material fact.

On page 13 of their brief, their retaliation argument is:

> "…It was after the Plaintiffs formally reported Defendant Halcovage in May of 2020 that he engaged in activity that created a hostile work environment that would have dissuaded a reasonable worker from making a charge of discrimination…."

(Doc. No. 268, p. 18).

What they fail to note is that there is no evidence that after May 2020, Halcovage changed any of the terms of the plaintiffs' employment. There is simply nothing in the summary judgment record that reflects he supervised their daily jobs, changed the terms of their employment or failed to equip

---

[9] Halcovage SF, ¶ 8.

them with the necessary tools to do their work.

What they do claim is that Halcovage retaliated by creating a "hostile work environment." But their claim is that they feared Halcovage merely by seeing him. They reference that he walked up a hill from the courthouse's lower parking lot to the upper parking lot where the main entrance was. The Does do not claim he interacted with the two of them who were sitting in their car. They just learned about it afterwards and feared for their safety. If the best they have to prove retaliation is seeing Halcovage's face in public forums, this does not rise to the level of retaliation.

## B. IIED

The Does characterize Halcovage's arguments against their IIED claims as weak and ignorant misrepresentations. (Doc. No. 268, p. 12 of 30).

That characterization is unjustified but unsurprising given the relationship between the parties post-lawsuit.

The Does describe acts that occurred many years ago which are well beyond the 2-year statute of limitations.[10] An example is their claim that

---

[10] A claim for the intentional infliction of emotional distress under Pennsylvania law is governed by a two-year statute of limitations. See 42 Pa.C.S.A. § 5524(7); Stovall v. Kallenbach, 220 A.3d 630 (Pa. Super. Ct. 2019).

Halcovage kissed and hugged Doe 1 in 2014 and 2015. (Doc. No. 268, p. 14 of 30).

Doe #1 has never accused Halcovage of rape or assault. She consented but says it was out of fear for the loss of her job.

A relationship gone wrong is not sufficient to support an IIED claim. If that were the standard, a majority of the population could have a cause of action. Instead, the courts preface their analyses of this tort, if such a tort exists, as requiring even more than criminal misconduct:

> "[I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46, comment d; Daughen v. Fox, 372 Pa. Super. 405, 412, 539 A.2d 858, 861 (1988)."

*Hoy v. Angelone*, 554 Pa. 134, 151, 720 A.2d 745, 754 (1998)

The courts also require physical injury or harm:

> "It has been said that a recitation of the facts of a meritorious IIED claim would induce the average listener to exclaim, "Outrageous!" See id. A plaintiff must also establish physical injury or harm.

See *Robinson v. May Dep't Stores Co.*, 246 F. Supp. 2d 440, 444 (E.D. Pa. 2003).

There is no evidence in the record of that. Moreover, Does 2 through 4 have an even bigger hurdle. They never had a physical

8

relationship with Halcovage. Observing him in public spaces after the lawsuit was filed or listening to comments they perceived as sexual hardly fits the outrageousness standard. While his visits to their homes may have sometimes been unwelcome, even if true, simply do not induce the average listener to react with the outrage described in the standard required under Pennsylvania law.

### C. Legislative Immunity

The Does argue that legislative immunity does not apply to Halcovage's public votes.

As we noted in our principal brief, Does 3 and 4 attribute malicious motives to the Commissioners' restructuring of the tax claim and assessment offices. They argue that legislative immunity does not apply because the commissioners' decisions were administrative.

"Legislative" immunity includes decisions such as proposing and voting for a budget. *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 118 S. Ct. 966, 140 L.Ed.2d 79 (1998).  It includes policymaking decisions. *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir. 1996). This inquiry must be made "stripped of all considerations of intent and motive on the part of the defendants." *Baraka v. McGreevy*, 481 F.3d 187, 200 (3d Cir. 2007) (quoting *Bogan*, 523 U.S. at 54)).

The decision on how to structure County offices to ensure maximum efficiency is the type of policymaking that must be protected by legislative immunity.

For example, in *Kalinoski v. Lackawanna Cty.*, 511 F. App'x 208, 213 (3d Cir. 2013), the Third Circuit noted that under Supreme Court and Third Circuit precedent, the restructuring of the Office of a Public Defender and corresponding elimination of a plaintiff's position was substantively legislative in character for which legislative immunity applied.

The court also held that immunity is not limited to only the actual casting of legislative votes, but encompasses "all aspects of the legislative process, including the discussions held and alliances struck regarding a legislative matter in anticipation of a formal vote." *Kalinoski v. Lackawanna Cty.*, 511 F. App'x 208, 213 (3d Cir. 2013)

Such a form of immunity frees policymakers for the County to make decisions they believe will satisfy the needs of the County without fear of paralyzing lawsuits.

Legislative immunity applies to any claims based on Halcovage's board of commissioners' votes.

## V. Conclusion

WHEREFORE, the defendant, George Halcovage, asks the court to grant his partial motion for summary judgment.

                                          NEWMAN | WILLIAMS

                                          By: s/ Gerard J. Geiger, Esq.
                                          Attorney I.D. PA44099

Dated: October 20, 2023

## Certificate of Service

I hereby certify that on this date, counsel for the parties were served a copy of this document via the court's ECF system.

NEWMAN | WILLIAMS

By: s/ Gerard J. Geiger, Esq.
Attorney I.D. PA44099

Dated: October 20, 2023